**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**GRADY GIBBONS**                                                                                    **PLAINTIFF**

**v.**                                                      **CIVIL ACTION NO. 2:23-cv-9-TBM-RPM**

**BROOKSIDE PROPERTIES, INC.** *et al.*                                              **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter stems from the alleged discriminatory and retaliatory termination of *pro se* Plaintiff Grady Gibbons by his employer, Defendant Brookside Properties, Inc. Hired in 2018, Gibbons' relationship with Brookside deteriorated over the course of his employment. While a Brookside employee, Gibbons alleges that he was harassed, conspired against, slandered, and retaliated against by Brookside employees and by the City of Hattiesburg, Mississippi, Police Department—leading to his discharge from Brookside in April 2022.

Gibbons later sued Brookside, including three Brookside employees in their individual capacities, the Hattiesburg Police Department, and the Narcotic Enforcement Team, asserting that his termination was in retaliation for allegedly reporting violations of company policy and other criminal activity by management, and because of his sexual orientation as a straight male, in violation of Title VII of the Civil Rights Act of 1964. Now before the Court are the Hattiesburg Police Department's and the Brookside Defendants' Motions to Dismiss [36] and [52].

Because Gibbons' Complaint does not state a claim for employment discrimination or retaliation under Title VII, the Hattiesburg Police Department's Motion to Dismiss [36] and the

Brookside Defendants' Motion to Dismiss [52] are granted. Next, Gibbons' state law claims against those Defendants are dismissed for failure to state a claim. All that remain are Gibbons' claims against the unserved Narcotic Enforcement Team.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Grady Gibbons began working as an assistant manager at Defendant Brookside Properties, Inc. on May 9, 2018. [23], p. 7. In June 2019, Gibbons discovered that one of his co-workers was allegedly operating a personal business on company property, purportedly against Brookside policy. *Id.* While not mentioned by name, this co-worker was Gibbons' supervisor, Brookside Manager and co-Defendant, Shannon Holliman. *Id.*; [12-1], p. 1.

On August 12, 2019, after telling Gibbons to break for lunch, Holliman sent Defendant Raymond McRaney, another of Gibbons' co-workers, a text message stating that she had a "proposal" for him. [23], p. 7. McRaney then texted Gibbons to see if he knew anything about this proposal, but Gibbons did not. *Id.* Later that day, Gibbons was pulled over by the City of Hattiesburg Police Department.[1] [23], p. 7; [33], p. 1. This stop was allegedly "under the direction" of Holliman's husband, a lieutenant in the Hattiesburg Police Department Narcotics Division.[2] [33], p. 1.

Months later, on April 16, 2020, Gibbons received an after-hours text message from McRaney, allegedly of a picture of "inappropriate sexual supplies on a receipt from an adult store." [33], p. 1. Gibbons also claims that McRaney sent him several more text messages later that year

---

[1] Gibbons received a police citation warning. Photographs of the police citation warning lists "following too close" and "improper equipment" as Gibbons' violations. [27-1], p. 4. No further action resulting from this stop is alleged.

[2] Gibbons claims that Holliman would periodically "call her husband . . . directly on his personal phone" without going through police dispatch to "harass certain residents on the property for non-emergency reasons." [23], p. 7.

that included messages where Holliman allegedly asked her husband to "send law enforcement officers in tactical gear to the [Brookside] property for unlawful acts." *Id.*

In December 2020, Holliman allegedly started "conspiring" with McRaney and another Brookside co-worker, Brad Kelly, to have Gibbons fired, arrested, or intimidated. [33], p. 1; [23], p. 8. A few weeks later, on January 7, 2021, Holliman issued Gibbons his first Performance Counseling meeting with a Brookside regional manager, to address what Gibbons describes as "fraudulent and made up infractions."[3] [23], p. 8. On January 13, 2021, Gibbons filed a complaint with Brookside human resources and the two Brookside owners, Andrew and Bill Warfield, informing them of Holliman's plan to fire him, and the "hostile work environment" that the plan had caused. *Id.*

In July 2021, Gibbons allegedly discovered an "unprofessional and personal" phone call between McRaney and an unnamed Brookside resident in which McRaney made "comments about [Gibbons] being a straight male." [23], p. 8; [12-1], p. 1. On July 28, 2021, Gibbons was demoted from Assistant Manager to Leasing Manager. [23], p. 9. This demotion, Gibbons claims, was for "whistleblowing and refusing to engage in illegal activity"[4] at Brookside. *Id.*

From October to December 2021, Holliman allegedly began defrauding the "Rental Assistance of Mississippi Program (RAMP)" program and collecting rent on a vacant apartment

---

[3] Gibbons recorded both the initial meeting with Holliman where she first confronted him about his alleged misconduct and the later performance counseling session with the Brookside regional manager. [23], p. 8.

[4] Along with alleged violations of company policy on side contracts, Gibbons also alleges that around this time, Holliman and McRaney "set up surveillance" at Brookside and used it "illegally" to "invade privacy and stalk residents." [23], p. 9. It is unclear if these actions constituted some of the "illegal activity" Gibbons complained of, or what type of whistleblower complaint was filed or with whom.

where a felon lived—rent that Gibbons told Holliman that he would not collect or post for.[5] [23], p. 9. On November 23, 2021, Gibbons was issued his second Performance Counseling meeting which Gibbons claims was for "refusing to engage in illegal activity and whistleblowing."[6] *Id.* Around this time, Gibbons' workload was increased such that "there was no way to meet expectations." *Id.* at p. 10. In March 2022, Gibbons received an "offensive text message" from Defendant Kelvin Yawn, the maintenance supervisor at Brookside, "harassing" Gibbons "under the circumstances." *Id.* There are no specifics provided about why this text message was offensive. Gibbons was ultimately terminated on April 18, 2022, by Holliman.[7] But this was not the end of Gibbons' alleged troubles.

On August 13, 2022, Gibbons caught "someone that appeared to be in law enforcement" on his home surveillance system allegedly taking a "picture of the side of [his] house." [23], p. 11.

---

[5] There are no specifics in the Amended Complaint about what fraud allegedly occurred involving the RAMP program, or any other details or allegations about the rent collection for the supposedly "vacant" apartment, beyond these conclusory allegations.

[6] This instance of whistleblowing allegedly stemmed from an incident involving a Brookside resident named Mark Reinbold. [23], p. 9. Reinbold, according to Gibbons, was the victim of another plan by Holliman and McRaney to "harass, bully, and instigate" Reinbold so he might be evicted over false accusations. *Id.* The "Defendants" allegedly filed charges against Reinbold, but the charges were later dropped. *Id.* Gibbons became involved after Reinbold contacted him to report Holliman and McRaney's harassment. *Id.*

[7] Gibbons alleges that shortly before his termination, Rodney Brown, a "felon" living on the property without a lease agreement, "walked into [Holliman's] office and closed the door for a brief minute for some odd reason." [33], p. 1. This incident with Brown appears to be part of a larger allegation laced throughout Gibbons' Complaint of gang related activity involving up to three felons living at Brookside. For example, Gibbons first claims that he was planning to evict another felon, Richard Slay, who did not have a lease on November 27, 2020, but was told to "stand down." [33], p. 1. Slay then later attempted to "assault" Gibbons at his home. *Id.* It is unclear who told Gibbons to stand down, and there are no other details of the incident. Next, on January 28, 2022, Gibbons alleges that Brown, "one of the three felons on the property," was "with" a resident 30 minutes before the resident died. [23], p. 10. Gibbons' claims that he gave Holliman information about this "crime" to give to the coroner, but Holliman "refused" to pass it along. *Id.* Finally, Gibbons alleges that on May 9, 2022, after he had been terminated, Brown and Slay "teamed up under the direction of 'someone' that offered a payout" to put a "hit" on Gibbons and Brookside co-worker Brad Kelly, but the hit was unsuccessful. *Id.* at 10-11. It is unclear how any of these incidents relate to Gibbons' current Title VII suit because Brown and Slay are not alleged to be Gibbons' employers. Nor are there any allegations that Brookside participated in the alleged "hit" put on Gibbons and Kelly. Indeed, according to his own allegations, Gibbons had been terminated from Brookside by this time.

Then on November 24, 2022, Gibbons again "caught a police officer . . . walk[ing] up to [his] front door knocking loud with bright lights," just before "drawing his stun gun." *Id.* Though Gibbons did hear the officer mention "to dispatch that he was going to inform [Gibbons] that his car's parking light was on." *Id.*

On January 17, 2023, after filing a charge with the Equal Employment Opportunity Commission and receiving a right to sue letter,[8] Gibbons filed his *pro se* case against Brookside Properties, Inc., Shannon Holliman, Raymond McRaney, and Kelvin Yawn, alleging Title VII violations of 42 U.S.C. Section 2000e-5(f) and also violations of 28 U.S.C. Section 1345. [1], p. 3. Gibbons then amended his Complaint on January 19, 2023. [2]. On March 16, 2023, Brookside Properties, Inc., Shannon Holliman, Raymond McRaney, and Kelvin Yawn moved to dismiss Gibbons' amended Complaint. [12]. Gibbons then moved to amend his Complaint [18] a third time on May 9, 2023, and was granted leave to do so on July 12, 2023. [22].

Gibbons filed his operative Complaint [23] on July 26, 2023, adding claims against the City of Hattiesburg Police Department and purportedly the "Narcotic (sic) Enforcement Team."[9] In

---

[8] Gibbons filed a charge of discrimination with the EEOC on October 4, 2022, listing sex discrimination and retaliation, and alleging that he was repeatedly harassed by his supervisor after reporting a violation of company policy on side contracts. [12-1], p. 1. Gibbons claims that he discovered a conversation between a co-worker and an unnamed resident in which Gibbons was called a "straight male." *Id.* Gibbons also asserts that on November 23, 2021, he filed a whistleblower complaint for violating the "laws of compliance requirements against residents." *Id.* Gibbons was then discharged on April 18, 2022, allegedly due to "unsatisfactory work performance." *Id.* On October 19, 2022, Gibbons received his EEOC right to sue letter that made no determinations or findings. [12-2], p. 1. Gibbons filed suit within the 90-day time frame.

[9] Gibbons' Complaint lists Defendant "Narcotic Enforcement Team" as a separate defendant from the Hattiesburg Police Department. [23], p. 3. Yet the "Narcotic Enforcement Team" has not, to this date, been served or otherwise participated in this suit. All the while, the Narcotic Enforcement Team remains a party to this suit. Rule 4(m) requires service of process within 90 days after a complaint is filed. If a plaintiff does not complete service of process on a defendant within 90 days, Rule 4(m) provides, in part, that courts "on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *See* Rule 4(m); *Copeland v. EMC Mortg. LLC*, No. 1:16-cv-159-HSO, 2016 WL 7634455, at *5 (S.D. Miss. Dec. 21, 2016). Accordingly, to put Gibbons on notice under Rule 4(m), a show cause will be entered requiring Gibbons to show why the "Narcotic Enforcement Team" should not be dismissed without prejudice, given that the "Narcotic Enforcement Team" has yet to be served—nearly a year after they were added to this suit.

an attachment to his Complaint filed the next day, on July 27, 2023, Gibbons noted that he "is seeking . . . $550,000 for total damages" for loss of enjoyment, monetary lifestyle, health conditions, embarrassment, and infliction of emotional distress. [24], p. 1. Gibbons also requested that Brookside Properties be enjoined from subjecting employees to discrimination and harassment under Title VII and implement effective measures to prevent discrimination and receive complaints. *Id.* The Hattiesburg Police Department then moved to dismiss Gibbons' Complaint [23][10] on September 19, 2023, under Rules 12(b)(1), (5), and (6). [36]. Finally, since their previous Motion to Dismiss [12] was rendered moot by Gibbons' new Complaint,[11] the Brookside Defendants renewed their Motion to Dismiss under Rule 12(b)(6). [52]. Now before the Court are the Hattiesburg Police Department's Motion to Dismiss [36] and the Brookside Defendants' Motion to Dismiss [52].[12]

## II. STANDARD OF REVIEW

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. FED. R. CIV. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or

---

[10] Gibbons subsequently filed several attachments to his Complaint including an attachment of relief [24], two CDs of recorded audio files [26] and [29], at least nine evidence exhibits [27], and a missing page from his Complaint [33].

[11] The Court entered an Order [44] mooting the Brookside Defendants' Motion to Dismiss [12] on October 19, 2023. In that Order [44] mooting the motion to dismiss, the Court inadvertently referenced Gibbons' first original Complaint [1], filed on January 17, 2023, instead of the operative complaint at the time, Gibbons' Amended Complaint [2], filed on January 19, 2023. In any event, the Motion to Dismiss [12] is moot, and Gibbons' Amended Complaint [23], filed on July 26, 2023, is the operative Complaint.

[12] Gibbons also moved for damages and an injunction for violations of the Racketeering Influenced and Corruption Organization Act and False Claims Act on October 24, 2023. [45]. That Motion [45] is addressed in a separate order.

(3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996). Because the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980). When a Rule 12(b)(1) motion is filed alongside other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.*

Next, the pleading standards for a Rule 12(b)(6) motion to dismiss stem from Rule 8, which provides that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Fifth Circuit has explained the *Iqbal/Twombly* standard:

> For a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. The factual allegations must be "enough to raise a right to relief above the speculative level."

*Oceanic Expl. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

The Court need not "accept as true conclusory allegations or unwarranted deductions of fact." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "The issue is not

whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

## III. ANALYSIS

### A. The Hattiesburg Police Department's Motion to Dismiss

The Hattiesburg Police Department has moved to dismiss under Rule 12(b)(1), (5), and (6). Because courts should ordinarily consider Rule 12(b)(1) motions before other Rule 12 motions, the jurisdictional attack will be addressed first. *Willoughby v. U.S. ex rel. U.S. Dep't. of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).

#### 1. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (Scalia, J.) (citations omitted). The Court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citations omitted). Unless otherwise provided, federal jurisdiction requires (1) a federal question arising under the Constitution, a federal law, or a treaty, or (2) complete diversity of citizenship between adverse parties, and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332.

To strip a district court of subject matter jurisdiction, a plaintiff's federal claim must have no plausible foundation. *Barnett v. Bailey*, 956 F.2d 1036, 1041 (11th Cir. 1992)). Generally, the "well-pleaded complaint" rule requires that the federal question appear on the face of the plaintiff's properly pleaded complaint. *See Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir.

2001) (noting that "the presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.") (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987)). The Hattiesburg Police Department notes that Gibbons' Complaint proceeds under federal question jurisdiction and "premises the Court's subject-matter jurisdiction on 42 U.S.C. 2000e 5(f) and 28 U.S.C. 1345." [37], p. 7; [23], p. 4, 5.

42 U.S.C. § 2000e 5 contains the enforcement provisions for Title VII claims. Title VII forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56, 126 S. Ct. 2405, 2408, 165 L. Ed. 2d 345 (2006) (citing 42 U.S.C. § 2000e–2(a)). Title VII's jurisdictional provision empowers federal courts to adjudicate civil actions "brought under" Title VII. § 2000e–5(f)(3). Title VII actions also fit within the grant of subject matter jurisdiction to federal courts over actions "arising under" federal law. 28 U.S.C. § 1331; *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 500, 126 S. Ct. 1235, 1236, 163 L. Ed. 2d 1097 (2006).

Gibbons' Complaint alleged that his federal claim arises under "42 U.S.C. 2000e 5(f) [Title VII]," and that jurisdiction over the claims is proper under Section 1331. [23], p. 4-5. A plaintiff properly invokes Section 1331 jurisdiction when she pleads a colorable claim "arising under" the Constitution or laws of the United States. *See Bell v. Hood,* 327 U.S. 678, 681–685, 66 S. Ct. 773, 90 L. Ed. 939 (1946). Gibbons' "well-pleaded Complaint" presents a question arising under Title VII.

Consequently, although Section 1345 does not provide a basis for jurisdiction,[13] it is irrelevant because Gibbons has sufficiently alleged a violation under Title VII. *See* § 2000e–5(f)(3) (empowering federal courts to adjudicate civil actions "brought under" Title VII). Since the Court has subject matter jurisdiction over the claims against the Hattiesburg Police Department, the Court will consider the merits of the claims under Rule 12(b)(6).

### 2. Merits of the Claims

Gibbons claims that the City of Hattiesburg Police Department violated Title VII by discrimination and retaliating against him, allegedly because of his sexual orientation as a straight male. But Title VII only protects "the interests of those in employment relationships," so a plaintiff cannot state a Title VII claim against a non-employer. *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 669 (5th Cir. 2020) (citation omitted), *cert. denied*, 141 S. Ct. 1382 (2021). "A Title VII claim "cannot be brought against a non-employer." *Blaylock v. Dallas Area Rapid Transit*, No. 3:22-cv-00627-N (BH), 2023 WL 4849441, at *3 (N.D. Tex. June 26, 2023), *report and recommendation adopted*, No. 3:22-cv-00627-N (BH), 2023 WL 4851892 (N.D. Tex. July 28, 2023).

There are no allegations that Gibbons is, or ever was, employed by the Hattiesburg Police Department. The allegations of employment discrimination and retaliation are focused on Brookside Properties. Indeed, the extent of the Hattiesburg Police Department's involvement concerns vague allegations that certain officers were used to "harass" Brookside residents and

---

[13] Section 1345 provides federal jurisdiction for "civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." The term "agency" includes "any department, independent establishment, commission, administration, authority, board or bureau of the United States[.]" 28 U.S.C. § 451. This suit *was not commenced* by the United States—it was commenced by Gibbons. Thus Section 1345 does not provide a basis for subject matter jurisdiction over the federal claims against the Hattiesburg Police Department.

"intimidate" Gibbons at various points.[14] None of these allegations, if they are even actionable, arise under Title VII. Gibbons has therefore failed to plausibly allege a Title VII claim against the Hattiesburg Police Department. The Hattiesburg Police Department's Motion to Dismiss [36] is therefore granted, and Gibbons' federal claims against the Hattiesburg Police Department are dismissed with prejudice. *See Sanders-Peay v. NYC Dep't of Educ.*, No. 14-cv-4534, 2014 WL 6473507, at *3 (E.D. N.Y. Nov. 18, 2014) (holding that "Sanders–Peay's claims against the Non–Employer Entity Defendants . . . cannot proceed under Title VII and are hereby dismissed with prejudice."); *Andela v. Univ. of Miami*, 461 F. App'x 832, 837 (11th Cir. 2012) (affirming dismissal for failure to state a claim "because UNC was not [plaintiff's] employer and his complaint does not sufficiently allege how UNC interfered with his employment[.]").

## B. The Brookside Defendants' Motion to Dismiss

Defendants Brookside Properties, Shannon Holliman, Raymond McRaney, and Kelvin Yawn have moved to dismiss under Rule 12(b)(6), alleging that Gibbons' Complaint "lacks factual details explaining how . . . Brookside . . . violated his Title VII protected rights." [53], p. 3. These Defendants also assert that Gibbons did not exhaust his EEOC administrative remedies because Gibbons' EEOC charge alleges retaliation and discrimination unrelated to gender or sexual orientation. [53], p. 7. For the reasons discussed below, their Motion to Dismiss [52] is granted.

---

[14] These allegations include an "illegal traffic stop" by the Hattiesburg Police Department in which he received a police citation warning. [27-1], p. 4. Gibbons does not allege a Section 1983 violation, but even if he did, this August 12, 2019, act would be beyond the statute of limitations to bring the claim. *See Thomas v. City of New Albany,* 901 F.2d 476, 476 (5th Cir. 1990) (commenting that in Mississippi, the general three-year statute of limitations of Miss. Code Ann. § 15–1–49 applies to Section 1983 claims). It also includes a claim of someone who "appeared to be in law enforcement" and "wearing tactical law enforcement pants and a weapon under his shirt" appearing on Gibbons' home surveillance system. [23], p. 11. Finally, it includes a claim that one night, a law enforcement officer was caught walking "up to [Gibbons'] front door knocking loud with bright lights shining thru [sic] front door just before drawing his stun gun for NO reason." *Id.* But Gibbons also notes that the officer announced to dispatch that he was there to inform Gibbons that his vehicle's parking light was on. *Id.*

*1. Defendants Shannon Holliman, Raymond McRaney, and Kelvin Yawn*

Title VII precludes suits against individual defendants acting in their individual capacities who are not otherwise employers. *Grant v. Lone Star Co.,* 21 F.3d 649, 652 (5th Cir. 1994). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e-(b). The law is well settled in the Fifth Circuit that "an essential element of proof in a Title VII claim is that the defendant sued is, in fact, an employer under Title VII." *Davis v. State Dep't of Health*, 744 F. Supp. 756, 762 (S.D. Miss. 1990); *see also Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996) (reaffirming that "an individual supervisor who does not otherwise qualify as an employer cannot be held liable for a violation of Title VII."). Additionally, although Title VII's statutory definition of employer includes "any agent" of an employer, the Fifth Circuit has held that this language does not impose individual liability on agents. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (internal citations omitted). Rather, in *Grant v. Lone Star Co.*, the Fifth Circuit held that Congress's purpose in extending the definition of employer to include agents was simply to incorporate *respondeat superior* liability into Title VII such that a Title VII suit against an employee is actually a suit against the corporation. 21 F.3d 649, 653 (5th Cir. 1994) (emphasis added).

Gibbons' Complaint lists Shannon Holliman as the "Arbor Walk Manager," and consistently refers to her as the "manager." [23], p. 2, 7, 8. Holliman is also the individual who terminated Gibbons in April 2022. [12-1], p. 1. Moreover, Raymond McRaney is listed as an "after hours employee" and Kelvin Yawn is listed as a "maintenance supervisor" at Brookside. *Id.* at p. 2. Each are sued for violations of Title VII as individuals. *Id.* The Fifth Circuit has repeatedly held that individuals cannot be held liable under Title VII in either their individual or official capacities.

*Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002)); *Umoren v. Plano Indep. Sch. Dist.*, 457 F. App'x 422, 425 (5th Cir. 2012) (citation omitted). Accordingly, Shannon Holliman, Raymond McRaney, and Kelvin Yawn are not liable under Title VII, and the claims against them are dismissed.

### 2. Brookside Properties, Inc.

In his EEOC charge and Complaint, Gibbons lists sex discrimination, retaliation, and hostile work environment, in violation of Title VII. [12-1], p. 1. The Court will analyze each in turn.

### EEOC Exhaustion

The Brookside Defendants claim Gibbons' claims are "subject to dismissal because he failed to exhaust his administrative remedies." [53], p. 6. "Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court," meaning a plaintiff must "file[ ] a timely charge with the EEOC and receive[ ] a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). The universe of claims a plaintiff can properly advance in a Title VII suit is set by the contours of the administrative process. "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).

That said, courts considering the scope of an EEOC complaint should not be stingy when assessing the litigable claims it encompasses. *See, e.g.*, *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970) ("[I]t is well established that the scope of an EEOC complaint should not be strictly interpreted.") (internal quotation marks omitted). Courts interpret what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the

administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Sanchez*, 431 F.2d at 466. Courts assess whether a claim is "like or related" to the underlying EEOC charge through a "fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and [by] look[ing] slightly beyond its four corners, to its substance rather than its label." *Stingley v. Watson Quality Ford, Jackson, MS*, 836 F. App'x 286, 291 (5th Cir. 2020) (internal quotations omitted). "The cause of action for [a] Title VII employment discrimination [lawsuit] may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 450–51 (5th Cir. 1983).

Gibbons' EEOC charge, in its entirety, states:

> I was hired in May 2018, by the above-named employer as assistant/leasing manager. In 2019 I reported manager for violating company policy regarding her working side contracts. Since reporting her, she has repeatedly harassed me. I discovered a conversation between Raymond McRaney and a resident, McRaney was discussing personal information and making comments about me being a straight male. On November 23, 2021, I filed a whistleblower complaint for violating the laws of compliance requirements against residents. On April 18, 2022, I was discharged for allegedly unsatisfactory work performance. McRaney, shared information after hours with residents and he was not discharged. The manager, Shannon Holliman, not only harassed me, but she slandered my name and defamed my character. I believe that I am being discriminated against because of my sex, orientation (male) and retaliated against in violation of Title VII of the Civil Rights Act of 1964 as amended.

[12-1], p. 1.

Gibbons has sufficiently exhausted his EEOC administrative remedies. Gibbons alleges that he was "discriminated against because of my sex, orientation (male) and retaliated against in

violation of Title VII," and provides enough allegations out of which an EEOC investigation could reasonably be expected to grow.[15] *See Sanchez*, 431 F.2d at 466. He states that he filed a "whistleblower complaint" against his employers for "violating" compliance laws against residents. He also alleges that he was repeatedly harassed by his Brookside manager and overheard a co-worker making comments about his sexual orientation. Finally, he asserts that he was terminated following these events—insinuating that it was in retaliation. There was thus sufficient notice to the EEOC of Title VII discrimination, retaliation, and even hostile work environment[16] claims to satisfy the "liberally construed" exhaustion requirement. *See McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008) (noting that EEOC charges are liberally construed).

<u>Title VII Sex Discrimination</u>

Next, to Gibbons' discrimination claim. Title VII prohibits employers from discriminating against any individual based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). At the motion to dismiss stage, Gibbons "need not submit evidence to establish the *prima facie* case for discrimination, [but he] must plead sufficient facts on all of the ultimate elements of the claim to make [his] case plausible." *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019); *see also Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). To state a claim for discrimination under Title VII, Gibbons must plead that he "(1) is a member of a

---

[15] Gibbons (1) checked the box for retaliation and sex; (2) alleged that he was harassed by his supervisor and characterized by a co-worker as a straight male; and (3) unlike in *Givs v. City of Eunice*, 512 F. Supp. 2d 522, 536-37 (W.D. La. 2007), a case cited favorably by the Defendants, Gibbons mentioned retaliation and discrimination due to his "sex, orientation (male)" under Title VII in his charge narrative. [12-1], p. 1.

[16] *See Fellows*, 701 F.2d at 450–51 (noting that Title VII cause of actions may be based, "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon *any kind of discrimination like or related to the charge's allegations*" that an EEOC investigation "could reasonably be expected to grow out of the initial charges of discrimination." (Emphasis added)).

protected class, (2) was qualified for the position that [he] held, (3) was subject to an adverse employment action, and (4) was treated less favorably than others similarly situated outside of his protected class." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).

Gibbons' Complaint does not sufficiently state a claim for employment discrimination under Title VII, even construed liberally.[17] While Gibbons alleges that he did suffer an adverse employment action, he does not allege how he was treated less favorably at Brookside than others similarly situated outside of his protected class. The "similarly situated" prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably "under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). This coworker, known as a comparator, must hold the "same job" or hold the same job responsibilities as the Title VII claimant; must "share[ ] the same supervisor or" have his "employment status determined by the same person" as the Title VII claimant; and must have a history of "violations" or "infringements" similar to that of the Title VII claimant. *Alkhawaldeh*, 851 F.3d at 426.

Gibbons asserts that, while he was terminated for unsatisfactory work performance, McRaney, who was not Gibbons' supervisor, was never reprimanded or terminated for the offensive "after-hours" call with the resident. [12-1], p. 1. First, there are no allegations that Brookside was even aware of the recorded call. Second, Gibbons never identifies McRaney as his required "comparator" or as a gay male, or otherwise as an individual outside of his protected class (a protected class which Gibbons does not really even identify). In fact, there are no allegations of

---

[17] *Cummings v. Am. Postal Worker's Union, Loc. 7, AFL-CIO*, No. 21-7009, 2022 WL 2188008, at *2 (10th Cir. June 17, 2022) (noting that while "we liberally construe pro se pleadings, . . . we cannot take on the responsibility of serving as the [pro se] litigant's attorney in constructing arguments and searching the record").

*any* individual outside of Gibbons' protected class being treated more favorably by Brookside. Finally, Gibbons does not allege that McRaney, or anyone else, held the same job or same job responsibilities as him. These alone justify dismissal of his Title VII discrimination claim. *See Raj*, 714 F.3d at 331 (affirming a Rule 12(b)(6) dismissal of Title VII discrimination claim when the plaintiff "did not allege any facts, direct or circumstantial, that would suggest [defendant]'s actions were based on [plaintiff]'s race or national origin or that [defendant] treated similarly situated employees of other races or national origin more favorably"). A Title VII claimant can only prove disparate treatment by presenting evidence that he was treated less favorably than others *outside of his protected class*. *See Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 409 (5th Cir. 2016) (emphasis in original). After all, Title VII "was not enacted to promote general fairness in the workplace, or . . . to protect against the indiscriminate firing of employees."[18] *Alkhawaldeh*, 851 F.3d at 427. Gibbons' Title VII discrimination claim is dismissed.[19]

---

[18] Further, even if Gibbons had made a *prima facie* case of discrimination, which he has not, there is evidence, by Gibbons' own admission, of a legitimate, nondiscriminatory reason for his demotion and later termination. *See Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (noting that under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff must first demonstrate a *prima facie* case, and then the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action). Gibbons had at least two professional counseling sessions with Brookside administration for workplace misconduct, and several recorded conversations with Holliman (attached to Gibbons' Complaint) about his poor work performance. [26]. There are also no allegations that the reasons given for his demotion, and later termination, were pretextual. *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (observing that if the employer does provide a legitimate, nondiscriminatory reason, then the plaintiff has the burden to prove that the proffered reason is pretextual—that is, that a discriminatory motive more likely motivated an employer's decision, such as through evidence of disparate treatment, or that an employer's explanation is unworthy of credence).

[19] Gibbons also requested that Brookside Properties be enjoined from subjecting employees to discrimination and harassment under Title VII, and implement effective measures to prevent discrimination and receive complaints. [24], p. 1. Because there is no underlying Title VII violation alleged, and therefore zero likelihood of success on the merits, there is no need for injunctive relief.

Title VII Retaliation

Next, Gibbons does not state a claim for Title VII retaliation, either. To sufficiently state a Title VII retaliation claim, "a plaintiff must plead sufficient facts on all of the ultimate elements to make her case plausible." *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244, 244 (5th Cir. 2017) (internal quotations omitted). The *prima facie* elements for a retaliation claim require Gibbons to show that he (1) engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) there was a causal connection between the participation in the protected activity and the adverse employment decision. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407-08 (5th Cir. 1999). Gibbons stubbles at the first element.

Under Title VII, a protected activity can consist of either: (1) "oppos[ing] any practice made an unlawful employment practice by this subchapter" or (2) "ma[king] a charge, testif[ying], assist [ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The first of these is known as the "opposition clause;" the second as the "participation clause." *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016). Participation clause protected activity is not at issue, as Gibbons filed his EEOC charge after his employment was terminated. 42 U.S.C. § 2000e–3(a); *and see Cuellar v. Sw. Gen. Emergency Physicians, P.L.L.C.*, 656 F. App'x 707, 709 (5th Cir. 2016). So Gibbons must rely on opposition clause protected activity.

For opposition clause protected activities, evidence that the plaintiff opposed the defendant's conduct, standing alone, is not sufficient. Rather, the clause "requires opposition *of a practice made unlawful by Title VII.*" *E.E.O.C.*, 819 F.3d at 240 (emphasis in original). Though the Fifth Circuit has made clear that the standard is not whether the plaintiff can successfully state and

support a Title VII claim but whether the plaintiff "reasonably believes the employment practice to be unlawful"—this "reasonable belief" standard acknowledges that there is "some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII." *See Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. Unit A Sept. 1981); *E.E.O.C.*, 819 F.3d at 241.

Gibbons seems to allege that his demotion, and later termination, were because of reporting Brookside staff for violations of company policies or other unclear illegal acts. But there are no allegations at all that those acts—filing a whistleblower complaint or reporting Holliman for violations of company policy—were opposing a "practice made an unlawful employment practice" by Title VII, or that Gibbons "reasonably believed" so at the time. [23], p. 9; [12-1], p. 1. *See* 42 U.S.C. § 2000e–3(a); *Smart v. Green*, 350 F. App'x 845, 846 (5th Cir. 2008) (affirming dismissal of retaliation claim because "nothing . . . indicates that the complaints concerned the infraction of a right with redress under Title VII"). There are simply not sufficient facts alleged of a protected activity that raise Gibbons' right to relief on the retaliation claim above the speculative level.[1] And a plaintiff is not entitled to relief when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Title VII Hostile Work Environment

Gibbons also laces throughout his Amended Complaint allegations of a hostile work environment as part of his discrimination and retaliation claims. To the extent that this is a stand-alone claim, it is also dismissed.

To state a claim for relief under Title VII for sex discrimination based on a theory of hostile work environment, a plaintiff must prove (1) that he belongs to a protected class, (2) that he was

subject to unwelcome harassment, (3) that the harassment was based on sex, (4) that the harassment affected a term, condition or privilege of employment, and (5) that the employer knew or should have known about the harassment and failed to take prompt remedial action. *Long v. Eastfield Coll.*, 88 F.3d 300, 309 (5th Cir. 1996). In order to be actionable, the challenged conduct must create an environment that a reasonable person would find hostile or abusive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, ----, 114 S. Ct. 367, 370, 126 L.Ed.2d 295 (1993). Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Id.* at 371.

Gibbons' allegations include an "illegal traffic stop" by the Hattiesburg Police Department in which he received a police citation warning. [27-1], p. 4. The December 2020 incident in which Holliman began planning to have Gibbons "fired, arrested" or intimidated. [33], p. 1; [23], p. 8. The after-hours call between McRaney and the unnamed resident in which Gibbons was called a straight male. [23], p. 8. His increased workload in late 2021, such that there "was no way to meet expectations." *Id.* at 10. The "offensive text message" from Yawn that harassed Gibbons "under the circumstances." *Id.* The unsuccessful "hit" that was put out on Gibbons by Slay and Brown— two of the felons living at Brookside—after Gibbons had already been terminated, and the payout for that hit offered by "someone." *Id.* at 11. The allegation that McRaney sent Gibbons a text message of "inappropriate sexual supplies on a receipt from an adult store[.]" [33], p. 1. Finally, Gibbons alleges that, following his termination, someone who "appeared to be in law enforcement" and "wearing tactical law enforcement pants and a weapon under his shirt" appeared on Gibbons'

home surveillance system, and that months later, a law enforcement officer was allegedly caught walking "up to [Gibbons'] front door knocking loud with bright lights shining thru [sic] front door just before drawing his stun gun[.]" [23], p. 11.

To start, many of these acts were not perpetrated by individuals (Brown and Slay) or entities (the Hattiesburg Police Department or other law enforcement agencies) with whom Gibbons has an alleged employment relationship. After all, Title VII requires "that the defendant sued is, in fact, an employer under Title VII." *Davis*, 744 F. Supp. at 762. And with the acts that do involve Brookside employees, Gibbons does not allege facts that link the alleged harassment to his sexual orientation as a straight male or show how the harassment was so severe or pervasive as to interfere with his work performance and "create an abusive working environment." For example, while the private after-hours call contained inappropriate language (Gibbons is repeatedly referred to by both McRaney and the unnamed resident as a "motherf*****"), the recording contained no comments severe enough to be actionable under Title VII.[20] *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998) (noting that "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment").[21] Nor are there allegations that Brookside even knew about the after-hours call.

---

[20] The Court has reviewed the 41-minute-long audio recording submitted in which Gibbons claims he is called a straight male. Presumably the comment that Gibbons refers to was possibly an unnamed resident's comment that Gibbons and another resident named Katherine should not introduce the unnamed resident to "straight" men because she is a lesbian and is uninterested. Aside from the fact that it is unclear if the comment was even directed at Gibbons, or that it was made by the unnamed resident, and not Gibbons' co-worker, McRaney, that single comment cannot state a claim for relief under Title VII. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (holding that being subjected to "one subjectively offensive utterance . . . every few days" is not actionable under Title VII when the utterances "were not severe, physically threatening, or humiliating[.]").

[21] *See also Hollins v. Premier Ford Lincoln Mercury, Inc.*, 766 F. Supp. 2d 736, 743 (N.D. Miss. 2011) (holding that allegations that employee plaintiff was called a "black b*****" and a "f***** b****") by a manager was not enough to be characterized as "extreme" under Title VII).

Additionally, there are no specifics indicating what made Yawn's text message to Gibbons offensive, details or context about McRaney's text message of "inappropriate sexual supplies," or particulars about how Holliman began planning to have Gibbons "fired, arrested" or intimidated. These bald accusations are insufficient. Ultimately, Gibbons has not pled a claim of hostile work environment that raises his right to relief "above the speculative level," and that claim is also dismissed. *Raj*, 714 F.3d at 331.

## C. State Law Claims

Embedded within his Title VII claims, Gibbons alleges that certain Brookside Defendants, at times, initiated slanderous comments to defame his character. Gibbons is thus seeking compensatory damages of $550,000.00 for loss of enjoyment, monetary lifestyle, health conditions, embarrassment, and infliction of emotional distress due to the Title VII violations.[22] [24], p. 1. To the extent that this is a state law claim for defamation and separate from his Title VII claims—which is unclear—it is dismissed for failure to state a claim.

In Mississippi, "[d]efamation is divided into two torts, including libel for written defamations and slander for oral ones." *Funderburk v. Johnson*, 935 So. 2d 1084, 1101 (Miss. Ct. App. 2006). The particular incident that Gibbons appears to zero in on for this claim concerns the after-hours conversation McRaney had with the unnamed resident ("This recorded after-hours call" had "all the elements of discrimination . . . *defamation of character*, hostile work environment

---

[22] While the federal law claims against the Hattiesburg Police Department and the Brookside Defendants have been dismissed, there remain federal law claims pending against the Hattiesburg Narcotic Enforcement Team. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (holding that when "the federal-law claims have dropped out *of the lawsuit* in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by *dismissing the case* without prejudice." (emphasis added)); *See* 28 U.S.C. § 1367(c)(3), *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993) (A federal court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims *after all federal law claims* have been dismissed) (emphasis added). Because there are federal claims still pending, the Court will exercise supplemental jurisdiction over the state law claims brought against Brookside.

. . . " (emphasis added)). [23], p. 8. Given that it was a recorded call, this conduct, as alleged, would constitute slander rather than libel. To prove the tort of slander, Mississippi courts require: (a) a false statement that has the capacity to injure the plaintiff's reputation; (b) an unprivileged publication, *i.e.*, communication to a third party; (c) negligence or greater fault on part of publisher; and (d) "either actionability of statement irrespective of special harm or existence of special harm caused by publication." *Franklin v. Thompson,* 722 So. 2d 688, 692 (Miss. 1998).

Ultimately, Gibbons fails to allege anything defamatory. As discussed, in the private after-hours recorded call, while Gibbons is called a "motherf*****" by both McRaney and the unnamed resident, those comments are insufficient. [26]. While offensive, "the common law has always differentiated sharply between genuinely defamatory communications as opposed to obscenities, vulgarities, insults, epithets, name-calling, and other verbal abuse." *Rodney A. Smolla*, LAW OF DEFAMATION, § 4:7 (2d ed. 1999); *see also Milner Hotels v. Dougherty*, 195 Miss. 718, 15 So. 2d 358 (1943) (holding that a hotel manager's words in cursing, abusing, and threatening hotel guest was not slanderous *per se* at common law); *Johnson v. Delta-Democrat Pub. Co.*, 531 So. 2d 811, 814 (Miss. 1988) (recognizing that "name calling and verbal abuse are to be taken as statements of opinion, not fact, and therefore will not give rise to an action for libel"); *Ferguson v. Watkins*, 448 So. 2d 271, 276 (Miss. 1984) (opining that "many demonstrably unfair" "linguistic slings and arrows" are not actionable under defamation). Additionally, the alleged comment about Gibbons being a straight male has not been refuted as false, nor is it objectively so offensive as to defame. *See Fulton v. Mississippi Publishers Corp.*, 498 So. 2d 1215, 1216 (Miss. 1986) (reminding that a claim of defamation requires that the plaintiff first establish "a false and defamatory statement concerning another"); *and Perkins v. Littleton*, 270 So. 3d 208, 216 (Miss. Ct. App. 2018) (noting that if the

hearer "must struggle to see how and whether [the words] defame, by definition the words are not defamatory in law."). Gibbons' defamation claim is dismissed with prejudice for failure to state a claim.

## IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Defendant City of Hattiesburg Police Department's Motion to Dismiss [36] is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that Defendants Brookside Properties, Shannon Holliman, Raymond McRaney, and Kelvin Yawn's Motion to Dismiss [52] is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff Grady Gibbons' federal claims against Defendants Brookside Properties, Shannon Holliman, Raymond McRaney, and Kelvin Yawn are DISMISSED WITH PREJUDICE for failure to state a claim.

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff Grady Gibbons' claims against Defendant City of Hattiesburg Police Department is DISMISSED WITH PREJUDICE for failure to state a claim.

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff Grady Gibbons' state law claims against Defendants Brookside Properties, Shannon Holliman, Raymond McRaney, and Kelvin Yawn are DISMISSED WITH PREJUDICE for failure to state a claim.

SO ORDERED THIS, the 9th day of August, 2024.

_____
TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE